acm

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-40156-JAR |
| ) | |
| OSCAR ALEJANDRO HERNANDEZ- ) | |
| TORRES ) | |
| ) | |
| Defendant. ) | |
| ) | |

### MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS STATEMENTS AND EVIDENCE

This matter comes before the Court on defendant Oscar Alejandro Hernandez-Torres' Motion to Suppress (Doc. 12) and Motion to Suppress Statement (Doc. 20). Defendant moves to suppress evidence obtained and statements made after a traffic stop and subsequent search of the vehicle he was driving on October 27, 2005. The Court held a hearing on defendant's motion on April 19, 2006. After reviewing the parties' filings and the evidence adduced at the hearing, the Court is now prepared to rule. For the reasons stated below, defendant's motions to suppress are denied.

**I.   Factual Background**

On October 27, 2005, Kansas Highway Patrol Trooper Andrew Dean was stationary in the median along Interstate 70 at about milepost 318. At approximately 10:45 a.m., Trooper Dean observed a black 1997 Ford Ranger Pickup, displaying Arizona Registration 717RZK, traveling eastbound. Trooper Dean testified that he observed a discrepancy in the alignment of the striping on the cab and bed of the pickup truck driven by defendant. He noticed that the lines

along the cab of the truck were uneven with the lines along the bed by about one and a half to two inches.  Trooper Dean stated that through his training and experience, he knew that this could be evidence of a false compartment hidden in the vehicle.  Trooper Dean entered the highway, and followed the pickup for approximately one mile.  After he observed the passenger-side tires of the pickup drive onto the fog line for approximately 200 to 300 feet, Trooper Dean initiated a traffic stop.

After stopping the vehicle, Trooper Dean approached the passenger side of defendant's pickup, and explained that he had stopped him because he was driving on the fog line.  Trooper Dean asked defendant if he was tired or if he had been consuming alcohol, and defendant responded, "no."  Trooper Dean then asked defendant for his driver's license, and also asked about defendant's travel plans.  Defendant stated that he was coming from Phoenix and going to Chicago, and then later stated that he was on his way home to Wisconsin.  He stated that he had purchased the pickup truck from a friend in Phoenix and was in that city for only one day.  He also told Trooper Dean that he would be in Chicago for approximately three days.

Trooper Dean testified that he observed very little luggage in the pickup and could smell a moderate odor of air freshener from the cab and noticed air fresheners hanging from the rear view mirror.  While walking back to his patrol car to run a computer check of defendant's license, Trooper Dean crouched down and looked underneath the truck and in between the cab and the bed of the truck.  Trooper Dean testified that he observed that the gas tank appeared to be touching the floor of the cab, which did not appear as if it were in factory position.  The gas tank was also covered with a metal sheet that was wrinkled and dented, as if someone had tampered with it.

A computer check determined that defendant's driver's license was valid. The registration and insurance were also valid, but they were not in defendant's name. However, defendant explained to Trooper Dean that he had just purchased the vehicle, and the registration and insurance had not yet been changed to his name. Trooper Dean also requested that the dispatcher run a criminal history check of defendant. When the dispatcher needed more information about defendant to complete the criminal history check, Trooper Dean walked back to defendant's truck and asked him additional questions regarding his social security number, his addresses, and whether he had any tattoos. Trooper Dean then returned to his patrol car. The criminal history check was negative for arrests or convictions. Trooper Dean then returned to defendant's truck, issued defendant a warning for failing to maintain a single lane of traffic, and returned defendant's license, registration, and insurance.

Trooper Dean then told defendant to have a "safe one," and defendant stated, "thank you." Trooper Dean took almost three steps away from the passenger side door toward the bed of the cab. At that point, Trooper Dean again looked between the cab and the bed of the truck, and asked defendant if he could ask him a couple more questions. Defendant agreed. Trooper Dean requested permission to "look" at the pickup, and Trooper Dean testified that defendant stated, "sure."[1] During this search, Trooper Dean made several observations that, based upon his training and experience, led him to believe defendant's truck had been altered to create a false

---

[1] At the hearing, the Court admitted into evidence a videotape of the traffic stop. (Ex. 24.) The Court has viewed this videotape, and was able to confirm the actions and statements made by Trooper Dean during the stop. However, the audio portion of this tape does not clearly evidence the statements made by defendant. Therefore, the Court refers to the testimony of Trooper Dean for the statements made by defendant.

compartment, below the cab.[2] The search began at 10:55 a.m., and continued roadside until 11:12 a.m. In the interim, another trooper arrived, and participated in the search of the vehicle. Based on Trooper Dean's belief that defendant's vehicle contained a false compartment, the troopers told defendant to follow them to the Kansas Department of Transportation ("KDOT") office in Alma, Kansas.

At the KDOT office, the troopers drilled a hole in the pickup, and removed a small amount of white powder, which was field tested and gave a weak positive for cocaine. The substance was later determined to be heroin. At that point, defendant was arrested and Trooper Dean read defendant his *Miranda* rights. Trooper Dean testified that defendant did not appear to want to talk, but he never specifically invoked his right to remain silent and he never asked for counsel. Trooper Dean continued to question defendant, and eventually obtained statements from him. Subsequently, defendant was interviewed by Drug Enforcement Agency ("DEA") agents. The DEA agents repeated *Miranda* warnings to defendant before the interview, and defendant never invoked those rights with the DEA agents. On December 28, 2005, defendant was indicted for possession with intent to distribute heroin.

## II.     Discussion

"'A traffic stop is a "seizure" within the meaning of the Fourth Amendment, even though

---

[2]These observations included: (1) the screws that attach the tie down handles to the side of the bed liner had recently been tampered with or removed; (2) the torque head screws appeared to have been removed; (3) the gas tank was resting up against the cab of the pickup and a section of the frame rail, on both sides of the vehicle, had been removed in an attempt to allow the cab to sit flush with the bed; (4) the sections of the factory frame appeared to have been cut with a cutting utensil; (5) three screws, holding the gas nozzle to the bed of the pickup, appeared to have been removed several times and looked to be very worn; (6) the gas nozzle had been removed recently, and the nozzle would have to be detached in order to remove the bed of the pickup, thus gaining access to the compartment; (7) there was black paint on the lower section of the cab which appeared to have a dull appearance in comparison to the rest of the pickup; (8) the bottom corner of the cab appeared to have edges that did not appear to be factory; (9) there were fresh metal shavings on the floor of the cab; and (10) Trooper Dean could feel a metal wall that had been created to seal off the space under the factory rise in the floor.

the purpose of the stop is limited and the resulting detention quite brief.'"[3]  The principles of

*Terry v. Ohio*[4] apply to such traffic stops.  Thus, the reasonableness of a stop depends on

"whether the officer's action was justified at its inception, and whether it was reasonably related

in scope to the circumstances which justified the interference in the first place."[5]

### A.     Initial Stop

Tenth Circuit cases establish that "a detaining officer must have an objectively

reasonable articulable suspicion that a traffic violation has occurred or is occurring before

stopping [an] automobile."[6]  Here, Trooper Dean testified that he saw defendant's vehicle drive

onto the fog line, for approximately 200 to 300 feet, and that he stopped defendant for a violation

of K.S.A. § 8-1522.  That statute provides:

> Whenever any roadway has been divided into two (2) or more clearly marked
> lanes for traffic, the following rules . . . shall apply.
> (a) A vehicle shall be driven as nearly as practical entirely within a single lane
> and shall not be moved from such lane until the driver has first ascertained that
> such movement can be made with safety.[7]

Defendant contends that Trooper Dean lacked reasonable suspicion to stop him.  The

government bears the burden of proving that its actions were justified, as the stop in this case

was a warrantless seizure.[8]  In this case, the government must prove by a preponderance of the

---

[3]*United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir. 2001) (en banc) (quoting *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (further quotation omitted)).

[4]392 U.S. 1 (1968).

[5]*Id.* at 19–20.

[6]*United States v. Cervine*, 347 F.3d 865, 869 (10th Cir. 2003); *United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir. 1993).

[7]K.S.A. § 8-1522.

[8]*United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994).

evidence that Trooper Dean had a reasonable articulable suspicion that a traffic violation occurred.[9] The Tenth Circuit has held that "under the language of the Kansas statute, when an officer merely observes someone drive a vehicle outside the marked lane, he does not automatically have probable cause to stop that person for a traffic violation."[10] Rather, "the court must conduct a fact-specific inquiry into 'all the surrounding facts and circumstances to determine whether the officer had the probable cause necessary to justify the stop.'"[11]

Here, the Court must consider the testimony of Trooper Dean who stated that he observed defendant's vehicle drive along the fog line, that there was little wind that day, and that other vehicles were not having trouble staying in their lanes due to weather conditions. The video of the stop does not contradict Trooper Dean's testimony that the wind was not strong enough to cause defendant's car to drift onto the fog line.[12] Additionally, the stretch of Interstate 70 on which defendant was traveling was flat and straight, and Trooper Dean did nothing to cause the vehicle to veer over the line.[13] An objective analysis of all the surrounding facts and circumstances therefore suggests that Trooper Dean had reasonable suspicion to stop defendant

---

[9]*United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc), *cert. denied*, 518 U.S. 1007 (1996).

[10]*United States v. Ozbirn*, 189 F.3d 1194, 1198 (10th Cir. 1999).

[11]*United States v. Zubia-Melendez*, 263 F.3d 1155, 1161 (10th Cir. 2001) (quoting *Ozbirn*, 189 F.3d at 1198).

[12]The Court notes that Trooper Dean wore a hat that has a wide, flat brim throughout the stop, and he had no problems keeping his hat on his head due to wind conditions.

[13]*See United States v. Gregory*, 79 F.3d 973 (10th Cir. 1996) (finding that there was not probable cause to stop defendant for violation of an analogous Utah statute when the road was mountainous and winding); *United States v. Ochoa*, 4 F. Supp. 2d 1007, 1012 n.4 (D. Kan. 1998) (finding that officers either caused or contributed to vehicle veering outside the lane).

for a violation of K.S.A. § 8-1522.[14]

### B. Detention

Even if the initial stop of defendant's vehicle was legitimate, the detention must "last no longer than is necessary to effectuate the purpose of the stop."[15] Its scope must be carefully tailored to its underlying justification.[16] However, "an officer conducting a traffic stop may request vehicle registration and a driver's license, run a computer check, ask about travel plans and vehicle ownership, and issue a citation."[17] Upon issuing a citation or warning and determining the validity of the driver's license and right to operate the vehicle, the officer usually must allow the driver to proceed without further delay.[18] A longer detention for additional questioning is permissible if the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring, or the initial detention changes to a consensual encounter.[19]

Here, the government argues that the length of the detention was permissible because

---

[14]*See United States v. Alvarado*, 430 F.3d 1305, 1309 (10th Cir. 2005) (finding reasonable suspicion of a violation of a similar Utah statute when trooper observed the vehicle cross one foot over the fog line on one occasion); *United States v. Dunn*, 133 F.3d 933, 1998 WL 8227, at *2 (10th Cir. Jan. 12, 1998) (finding officer had reasonable suspicion when there was only one swerve over the right line when the weather conditions were good and the defendant was driving a small car that was not difficult to control) (unpublished table opinion); *United States v. Flores-Ocampo*, No. 04-40120-JAR, 2005 WL 466209, at *5 (D. Kan. Feb. 21, 2005) (finding trooper had reasonable suspicion to stop defendant when the vehicle veered about a foot onto the shoulder and was not attributable to external circumstances).

[15]*United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).

[16]*United States v. Gutierrez-Daniez*, 131 F.3d 939, 942 (10th Cir. 1997), *cert. denied*, 523 U.S. 1035 (1998).

[17]*United States v. Zubia-Melendez*, 263 F.3d 1155, 1161 (10th Cir. 2001).

[18]*Patten*, 183 F.3d at 1193; *United States v. Anderson*, 114 F.3d 1059, 1064 (10th Cir. 1997).

[19]*United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998).

Trooper Dean had an objectively reasonable and articulable suspicion that illegal activity was occurring. Defendant argues that Trooper Dean's observation of the truck's altered appearance is not enough to justify the continued detention. But the government contends that more than just the truck's altered appearance led to Trooper Dean's reasonable, articulable suspicion of criminal activity to justify the seventeen minute detention. Trooper Dean also based his suspicion on the odor of air freshener, defendant's unusual travel plans, and the fact that the truck was not registered in the defendant's name. Further, Trooper Dean had an objectively reasonable suspicion that there was a hidden compartment in the truck. The tape of the traffic stop clearly shows Trooper Dean observing the condition of the vehicle. Several times, Trooper Dean looked between the cab and the bed of the truck. While returning to his patrol car after receiving defendant's license and registration, Trooper Dean crouched down and looked under the bed of the truck. Trooper Dean testified that when he looked between the cab and the bed of the truck, he observed that the gas tank was touching the floor of the cab. Trooper Dean testified that he believed the gas tank was not in factory position because it was safety hazard to have the gas tank positioned where it would rub against the floor of the cab and potentially cause a fire. He also noticed that the gas tank was covered with a metal sheet that appeared to be damaged or wrinkled, as if someone had tampered with it.

While defendant's expert testified that these alterations in the truck could have been the result of repair to the truck after a collision, these alterations could also be consistent with a hidden compartment.[20] Based on his observations, Trooper Dean had a reasonable belief that the truck contained a hidden compartment. Further, Trooper Dean's observations of the truck's

---

[20]Additionally, the Court notes that the expert testified that he only saw photographs of the vehicle and not the actual truck.

altered appearance coupled with the odor of air fresheners, defendant's unusual travel plans, and the registration being in another person's name gave Trooper Dean reasonable suspicion that illegal activity was occurring. Thus, the detention was not unnecessarily prolonged.

### C.    Search

Defendant contends that the search of the vehicle was illegal and any fruits of the search should be suppressed. But the government maintains that the search was lawful for two reasons: (1) Trooper Dean had probable cause to search the vehicle; and (2) defendant consented to the search. Addressing the government's first argument, "a warrantless search of an automobile is permitted only if 'there is probable cause to believe that the vehicle contains contraband or other evidence which is subject to seizure under law.'"[21] "In determining whether probable cause exists, an officer 'may draw inferences based on his own experience.'"[22]

In this case, Trooper Dean testified that, based on his training and experience, he believed that the altered appearance of defendant's truck was due to the existence of a hidden compartment. Trooper Dean observed that the alignment of the striping on the cab and bed of the truck was uneven, with the bed of the truck sitting lower than the cab. At the hearing, the government introduced into evidence photographs of the truck and Trooper Dean pointed to the discrepancies that he noticed.[23] The Court notes that the misalignment is particularly noticeable from the rear driver's side of the vehicle, where it is obvious that the bed is sitting lower than the

---

[21]*United States v. Mercado*, 307 F.3d 1226, 1230 (10th Cir. 2002) (quoting *United States v. Ludwig*, 10 F.3d 1523, 1528 (10th Cir. 1993)).

[22]*Id.* (quoting *Ornelas v. United States*, 517 U.S. 690, 695 (1996)).

[23](Ex. 1–23.)

cab.[24] Trooper Dean would have viewed the truck from this angle when he stopped defendant. Trooper Dean also observed that the gas tank was touching the floor of the cab and that it was covered with a damaged or wrinkled metal sheet. "It is well established that evidence of a hidden compartment can contribute to probable cause to search."[25] Here, Trooper Dean's observations were evidence of a hidden compartment in the truck. This evidence, when taken together with the other evidence including the air freshener odor, defendant's unusual travel plans, and the registration being in another person's name, gave Trooper Dean probable cause to search the vehicle.[26]

Additionally, Trooper Dean's search of the vehicle was lawful because defendant consented to the search. After Trooper Dean returned the documentation to the defendant along with a warning for failing to maintain a single traffic lane, Trooper Dean told defendant to have a "safe one," and defendant said, "thank you." Trooper Dean took several steps away from the vehicle toward the bed of the truck. At this point, defendant was free to leave. In making this determination, "[t]he correct test is whether a reasonable person in [defendant's] position would believe he was not free to leave."[27] Here the Court determines that a reasonable person would have believed he was free to leave after Trooper Dean returned defendant's documents and

---

[24](Ex. 4, 7.)

[25]*Id.* (citing *United States v. Anderson*, 144 F.3d 1059, 1066 (10th Cir. 1997)).

[26]*See United States v. Vasquez-Castillo*, 258 F.3d 1207, 1213 (10th Cir. 2001) (finding that under the totality of the circumstances there was probable cause to search when there was an unusually small amount of cargo, there were irregularities in the log book and bill of lading, there was the smell of raw marijuana, and there was evidence of a hidden compartment); *Anderson*, 114 F.3d at 1066 (holding discovery of "what appeared to be a hidden compartment in the gas tank," along with other evidence, sufficient to furnish probable cause).

[27]*United States v. Hernandez*, 93 F.3d 1493, 1499 (10th Cir. 1996).

10

wished him a "safe one."[28]

Then Trooper Dean again looked between the cab and the bed of the truck and then asked defendant if he could ask him a couple more questions. Defendant said, "yes." "When a search is conducted pursuant to a suspect's consent, the government bears the burden of proving consent and must show by 'clear and positive testimony that consent was unequivocal and specific and freely given . . . without duress or coercion, express or implied.'"[29] Factors to consider in determining whether consent was obtained "without duress or coercion, express or implied, include: whether the consent request occurs during the suspect's detention; whether the officer fails to inform the suspect he or she was free to leave or refuse consent; whether the person granting consent exhibits discomfort during the search or expresses a desire to halt the search; and whether multiple officers are present.[30]

Here, when defendant gave his consent to search, he was not illegally detained. Trooper Dean had returned his license and registration to defendant and had stepped away from the vehicle. "A consensual encounter is the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement officer."[31] "So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is

---

[28]*See id.* (finding that a reasonable person would have believed he was free to leave after the officer returned defendant's license and registration and told him he was free to go); *see also United States v. Mendez*, No. 04-40052-JAR, 2005 WL 643458, at *4 (D. Kan. 2005) (concluding that a reasonable person would ahve believed he was free to leave the officer returned defendant's license and registration, wished him a safe trip, and took a short step away from the vehicle).

[29]*United States v. Winningham*, 140 F.3d 1328, 1331 (10th Cir. 1998) (quoting *United States v. McKneely*, 6 F.3d 1447, 1453 (10th Cir. 1993) (citing *United States v. Butler*, 966 F.2d 559, 562 (10th Cir. 1992))).

[30]*Id.* at 1332 (citations omitted).

[31]*United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996).

11

consensual."[32]  "A police officer does not have to inform the citizen they are free to disregard any further questioning for the encounter to become consensual."[33]  "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."[34]  In deciding if a police-citizen encounter amounts to a seizure, "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'"[35]  In this case, the Court finds that under all of the circumstances, a reasonable person would have believed he was free to leave after Trooper Dean returned his documents, wished him a "safe one," and stepped away from the vehicle.  Afterwards defendant gave his consent to additional questioning.  Because defendant consented and there is no evidence of coercion by Trooper Dean, defendant was not illegally detained at that point.

Further, there is no evidence that defendant exhibited discomfort during the search or expressed a desire to halt the search.  Also, Trooper Dean was the only officer present when defendant consented to search.  Another officer arrived on the scene during Trooper Dean's search of the truck, but this occurred after defendant had given his consent to search.  While Trooper Dean never advised defendant that he had the right to refuse consent, the Tenth Circuit has "reject[ed] the suggestion that the trooper's failure to advise [defendant] that he was free to

---

[32]*Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)).

[33]*United States v. Manjarrez*, 348 F.3d 881, 886 (10th Cir. 2003) (citation omitted).

[34]*Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).

[35]*United States v. Hill*, 199 F.3d 1143, 1147 (10th Cir. 1999) (quoting *Bostick*, 501 U.S. at 437), *cert. denied*, 531 U.S. 830 (2000).

leave, or that he could refuse consent to search, render[s] the consent involuntary"[36] when the events occurring before the search were lawful.  Upon weighing the various factors, the Court determines that Trooper Dean lawfully obtained consent to search defendant's vehicle.[37]

### E.   Statements

Defendant argues that after he was arrested, he invoked his rights under *Miranda v. Arizona*,[38] but Trooper Dean and DEA agents proceeded to interview him.  Defendant argues that this was a *Miranda* violation that warrants suppression of all statements made by defendant to the agents.  The government responds, however, that there is no evidence that defendant ever invoked his *Miranda* rights.  Trooper Dean testified that he read defendant his *Miranda* rights when he was placed under arrest at the KDOT office.  Trooper Dean stated that defendant did not initially respond to his questioning, but defendant also did not affirmatively refuse to speak with him or request counsel.  Trooper Dean testified that defendant did not give him any reason to believe that he was invoking his *Miranda* rights.

At around 2:30 pm on the day of the search, two DEA agents arrived at the KDOT office to question defendant.  Trooper Dean advised the DEA agents that he had read defendant his *Miranda* rights but that defendant spoke freely with him.  When the DEA agents met with defendant, Agent Sarah Everhard testified that she again read defendant his *Miranda* rights.

---

[36]*United States v. Gregoire*, 425 F.3d 872, 880 (10th Cir. 2005).

[37]The Court notes that at the point when the troopers asked defendant to follow them to the KDOT office for further inspection of the truck, defendant was in custody.  However, after Trooper Dean finished searching defendant's vehicle on the side of the highway, Trooper Dean had probable cause to take defendant into custody because there was sufficient evidence based on his observations that the truck contained a hidden compartment that contained contraband.  *See supra* n.2 (listing ten separate observations made by Trooper Dean during his search of the vehicle which were evidence that the truck contained a hidden compartment).

[38]384 U.S. 436 (1966).

Agent Everhard stated that defendant told her that he understood his rights, and that there did not seem to be a language or communication barrier between them.  Agent Everhard stated that defendant appeared to voluntarily waive his rights because he never asked for an attorney.

In determining whether a suspect invoked the right to remain silent, the Court should "examine the entire context of the relevant statement for a clear and unambiguous assertion of the right to remain silent."[39]  A defendant's invocation of *Miranda* rights must not be "ambiguous or equivocal."[40]  The Supreme Court has made clear that: "we decline to adopt a rule requiring officers to ask clarifying questions.  If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him."[41]

The Court finds that nothing in the testimony given at the suppression hearing can be construed as an invocation by defendant of his *Miranda* rights.  Trooper Dean and Agent Everhard testified that they had no problems communicating with defendant, and defendant told them that he understood his *Miranda* rights.  While defendant may have been reluctant to speak with Trooper Dean, he never unequivocally invoked his right to remain silent or his right to counsel by expressing it to Trooper Dean or the DEA agents.  Because defendant never made an unequivocal invocation, Trooper Dean and the DEA agents were not required to cease their questioning.  Thus, the Court finds that suppression of defendant's statements is not warranted.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motions to Suppress (Docs. 12, 20) are **DENIED**.

---

[39] *United States v. Rambo*, 365 F.3d 906, 910 (10th Cir. 2004) (citing *United States v. Johnson*, 56 F.3d 947, 955 (8th Cir. 1995)).

[40] *Davis v. United States*, 512 U.S. 452, 459 (1994).

[41] *Id.* at 461–62.

**IT IS SO ORDERED**.

Dated this 27th day of April 2006.

                                                  S/ Julie A. Robinson
                                                Julie A. Robinson
                                                United States District Judge

*United States v. Hernandez-Torres*, No. 05-40156-JAR, Memorandum and Order Denying Defendant's Motions to Suppress Statements and Evidence